UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JORDAN DIJON-BARLEY,

       Plaintiff,

   v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.

Civil No. 05-1783-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Jordan Dijon-Barley brought this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). Plaintiff requests review of a final decision by the Commissioner of the Social Security Administration (SSA) denying her application for Supplemental Security Income benefits (SSI) and Social Security Disability Insurance benefits (DIB). She seeks an order reversing the Commissioner's decision and remanding her case for an award of benefits.

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he is substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1 -- OPINION AND ORDER

This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case and counsel's arguments fully, this court concludes that the Commissioner's decision must be reversed and remanded for further proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed applications for benefits on October 16, 2002, with a protective filing date of August 1, 2002. Tr. of Admin. R. (hereinafter, Tr.) 99-102, 488-90. She alleged disability beginning September 1993 related to back and neck pain. Tr. 113. Plaintiff's applications were denied initially and on reconsideration. Tr. 45-49, 53-55, 492-96, 498-500. Plaintiff requested a hearing, and an administrative law judge (ALJ) held a hearing on November 9, 2004. Testimony was elicited from three witnesses: plaintiff, who was represented by counsel Alan Graf; Agency medical expert (ME) Larry Hart, Ph.D.; and Paul Morrison, a vocational expert (VE). Tr. 512-57.

The ALJ concluded subsequently that plaintiff had the ability to perform her past relevant work as a real estate assistant or membership sales coordinator, and was able to perform other work in the national economy, such as parking lot cashier and library clerk. Tr. 31-42. Plaintiff requested administrative review. The Appeals Council declined (Tr. 7-10), rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff subsequently filed a Complaint seeking this court's judicial review.

## FACTUAL BACKGROUND

Plaintiff was thirty-two years old at the time of the ALJ's decision. Tr. 516. She obtained a high school education and completed two years of college. Tr. 119. She last worked in 2001 as a real estate assistant and had other work experience as a casting assistant, sales assistant, auto leasing and salesperson, membership sales person, retailer, and dance instructor. Tr. 516, 545-46. Plaintiff alleges disabilities related to back pain, neck pain, learning disabilities and anxiety. Details of her medical history will be addressed as necessary throughout this ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

3 -- OPINION AND ORDER

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining eligibility for SSI or DIB. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in substantial gainful activity SGA since 2001, but had engaged in SGA during 2001, after her alleged onset date of March 15, 1993. Tr. 36, 41, Finding 2.

At step two, the ALJ found that plaintiff had the severe impairment of back strain. Tr. 37-38, 41, Finding 3. The ALJ did not conclude that plaintiff's other alleged disabilities relating to learning and to anxiety qualified as severe.

At step three, the ALJ found that plaintiff's severe impairment did not meet or equal the Listings. Tr. 38, 41, Finding 4. The ALJ determined that plaintiff had RFC to do light exertion work with the ability to switch from sitting or standing at one-half hour intervals, and only occasional stooping, crouching, or crawling. Tr. 40-41, Finding 6.

At step four, the ALJ found that plaintiff could return to her past relevant work as a real estate assistant or membership sales coordinator. Tr. 40-41, Findings 7-8.

At step five, the ALJ found that plaintiff was able to perform other work, including parking lot cashier and library clerk. Tr. 40. Therefore, the ALJ found plaintiff not disabled. Tr. 40-41.

## QUESTION PRESENTED

Two of plaintiff's primary arguments are that the ALJ erred by: (1) depriving plaintiff of a full and fair hearing by failing to exercise affirmative duties to look into all the issues and

develop the evidence mandated by 20 C.F.R. § 416.1444 and the teaching of *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); and (2) improperly rejecting lay evidence. These arguments are well-taken and compel an order reversing the Commissioner's decision and remanding for further analysis. Accordingly, because this court concludes that these errors require further proceedings, further discussion regarding other alleged errors is unnecessary. The Commissioner shall comply with the parameters of this remand and all applicable standards regarding the evaluation of evidence pertaining to plaintiff's allegations of disability.

## ANALYSIS

1. Failure to Fully Develop Record

Unprofessional conduct on the part of the ALJ, plaintiff's prior counsel, and the ME at plaintiff's hearing casts doubt on the question of whether adequate evidence and testimony was elicited and whether the record was fully and fairly developed for determining plaintiff's possible eligibility for benefits.

This court acknowledges, as do the counsel for the parties in this action, that a claimant bears the initial burdens of proving disability. However, the ALJ also has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown*, 713 F.2d at 443)). This duty extends to the represented as well as to the unrepresented claimant. *Id*.

The responsibility to develop the record rests with the ALJ in part because disability hearings should not be adversarial in nature. *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

7 -- OPINION AND ORDER

Administrative regulations also mandate the ALJ to look "fully into the issues" at hearings. 20 C.F.R. §§ 404.944 and 416.1444; *see also Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989).

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised during the presentation of medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998, as amended Jan. 26, 1999); *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 20 C .F.R. §§ 404.1527(c)(3) and 416.927(c)(3) (explaining how an ALJ may obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (obtaining additional information from treating doctors).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert or to order a consultative examination. *See* 20 C.F.R. §§ 404.1519a and 416.919a; *Armstrong v. Comm.*, 160 F.3d 587, 590 (9th Cir. 1998) (the ALJ may be required to call a medical expert to assist in determining when the plaintiff's impairments became disabling in cases in which diagnoses of mental disorders existed prior to the date of disability found by the ALJ and evidence of those disorders prior to the diagnoses).

Here, the ME and counsel for plaintiff demonstrated apparent animosity toward one another to such an extent that the ALJ was compelled to interrupt counsel's examination of the ME. The ALJ acknowledged that he was shouting and feeling "fed up" with the attorney and ME. Tr. 541. The ALJ declared that he would not tolerate them "acting like 12 year olds." *Id*.

When counsel tried to deny this accusation, the ALJ scolded him, warning him not to "play games" and declaring that he, the ALJ, did not like "being insulted like that." *Id*.

The ALJ inquired if counsel had any more questions of the ME, and the attorney responded "No, I don't." *Id*.

The ALJ replied, "Are you trying to tell me that if I hadn't . . . spanked your hand, you wouldn't have asked any more questions?" *Id*.

Shortly thereafter, counsel attempted to elicit testimony revealing bias on the part of the ME, and the ALJ interrupted again, telling counsel to "Grow up and get over it," and asserting that the ALJ was familiar with the ME from other hearings, and that the ME is not biased in his testimony. Tr. 542. Counsel objected to "evidence being brought in from other hearings by the administration," and the ALJ responded, "The hell you do." *Id*.

The ALJ proceeded to elicit the following unchallenged diagnosis of plaintiff from the ME: "the only diagnosis I can come up with, Judge, is a non-medical . . . non-psychiatric, nonpsychological . . . pain disorder." Tr. 544. He opined that "the data in this file, psychologically, psychiatrically is remarkably limited with the exception of the neuro-psychological evaluation that was done about August of '93." Tr. 544. Immediately after this testimony, the ALJ asked if counsel had any questions for the expert. The attorney replied, "No." *Id*. The ALJ then excused the ME and called the VE to testify.

Plaintiff raises compelling concerns that the record was developed inadequately because of the stark animosity demonstrated between the ALJ and plaintiff's attorney, and apparently between counsel and the ME. Specifically, plaintiff suggests that "important medical testimony regarding the opinion of Dr. Gostnell, the consultative examiner whose opinion strongly supports a finding of disability, was never elicited." Pl.'s Reply at 2.

9 -- OPINION AND ORDER

On August 9, 1993, David Gostnell, Ph.D., wrote a neuropsychological assessment of plaintiff that included, in part, observations that plaintiff displayed "cognitive disorganization" prior to and during his evaluation of her. Tr. 357. Plaintiff's reverse visual memory span was low-average, her reverse auditory digit span was defective, and her score on mental calculations and quantitative problem-solving was borderline defective. Tr. 358. She had a defective score on the paced auditory serial addition test, and she had low attention and concentration IQ scores. Tr. 360.

The doctor summarized that "although alert and oriented and capable of normal visual concentration and visuomotor function, [plaintiff] demonstrated a distinct disadvantage when attempting to concentrate on tasks involving numerical sequence and quantitative information processing." Tr. 358. Doctor Gostnell opined that these results indicated "significant psychopathology" and that individuals with this pattern were "likely to evidence the rapid onset of excitement, confusion, disorientation, and hyperactivity." Tr. 361. Moreover, such persons are likely to report impaired concentration and thinking and are "likely to be marginal in their reality testing. At various times they are depressed, anxious, hostile, and unpredictable. Their somatic complaints may have a bizarre quality and even become delusional at times." *Id*.

Doctor Gostnell opined that Plaintiff's neuropsychological profile revealed "difficulties with concentration, particularly in relation to sustained sequential processing," and noted that plaintiff had difficulties sustaining gainful employment, problems which were consistent with the findings of attentional impairment and hyperexcitability. Tr. 361-62. He recommended counseling and possibly medication. *Id*.

In his rulings regarding Dr. Gostnell's opinions, the ALJ relied heavily upon the brief testimony of the ME. The ALJ characterized the ME's testimony as stating that "the claimant's undiagnosed learning disabilities have created no limitations for the claimant," and that the claimant's anxieties "have created no limitations." Tr. 38. It bears repeating at this point that the ME's *actual* testimony, as provided already, was limited to this: "the data in this file, psychologically, psychiatrically is remarkably limited with the exception of the neuro-psychological evaluation that was done about August of '93." Tr. 544.

Accordingly, it is clear that the ALJ relied upon a stark misinterpretation of the ME's testimony to conclude that plaintiff's alleged learning disabilities and anxieties were non-severe. It is also clear that the misinterpreted testimony was elicited after heated exchanges between the ALJ and plaintiff's counsel, and that in light of the evident tension, counsel abandoned opportunities to pursue critical examination of the "neuro-psychological evaluation" from August 1993 that the ME had acknowledged was an "exception" to an otherwise limited data file.

Because the ALJ's duty to fully and fairly develop the record was crippled by personal animosity displayed at plaintiff's hearing, the ME's testimony was limited and incomplete, and was insufficient as grounds for the ALJ's subsequent rejection of Dr. Gostnell's findings. Because that rejection was insufficiently supported by the evidence, the ALJ's related failures to analyze and consider plaintiff's possible limitations regarding learning and anxieties were also errors. These errors compel that this matter be remanded for further proceedings to resolve the scope and possible impact of all of plaintiff's limitations.

2.     Lay Testimony

11  -- OPINION AND ORDER

The ALJ also erred in finding that the lay testimony of Russell Barley, plaintiff's father, was "of limited use" because Barley "is not trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence." Tr. 39.  The ALJ also complained that Barley "has no demonstrated vocational expertise necessary to support a conclusion the claimant is unable to work." *Id*.

Barley provided statements indicating that plaintiff is in pain and lacked the ability to perform regular, full-time skilled work on a continuing basis. Tr. 151-60.  Barley noted that plaintiff walks sporadically, naps for up to three hours during the day depending on pain levels, and often needs to lay flat to reduce pain after an activity.  Tr. 154, 156.  Barley also noted many negative side effects plaintiff suffered from medication and pain. Tr. 159-60.

In determining a claimant's possible disability, an ALJ must consider lay witness testimony when it is presented. 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *see also Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006), (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  Lay testimony as to a claimant's symptoms or how an impairment affects a person is considered competent evidence and cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).

To discount the testimony of lay witnesses, an ALJ must give reasons that are germane to each witness.  *Stout*, 454 F.3d at 1053; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so" (citations omitted)).

The ALJ's reasoning for discounting Barley's statements is unpersuasive. While it is obviously true that plaintiff's father is not "trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence" and lacks "vocational expertise an acceptable medical source," Tr. 39, and is otherwise unqualified to offer medical opinions, these observations fail to state or apply the appropriate standards applicable to the proper evaluations of lay testimony. Regardless of his medical qualifications or his "vocational expertise," plaintiff's father offered competent testimony that the ALJ was required to either take into account or disregard with germane reasons. This he failed to do. The ALJ's conclusory rationalizations for rejecting the lay testimony fall short of amounting to "germane reasons" and are therefore insufficient.

When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

In this case, the court cannot so conclude. The lay testimony at issue includes descriptions from plaintiff's father regarding plaintiff's pain, her need for extensive rest, and the manifestations of medication side effects. As a result, given the inadequacies regarding the evaluation of the lay testimony presented, as well as the errors arising from the ALJ's failure to fully and fairly develop the record, this court concludes that a remand is appropriate in this matter.

    3.    Remand

As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases. Specifically, the first two sentences of Section 405(g) provide that any individual may obtain a review of a final decision of the Commissioner of Social Security that is rendered after a hearing to which the individual was a party, irrespective of the amount in controversy. This review is obtained in the district court of the United States for the judicial district in which the plaintiff resides.

The fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney's fees even when the case has been remanded for further administrative action. *Id*. (citing *Schaefer*, 509 U.S. at 297-302).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented

14 -- OPINION AND ORDER

before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n.2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id.*

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id.* In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id.*

On the other hand, a decision to remand for further proceedings is appropriate when such proceedings are likely to be useful. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Further proceedings will be useful, and I exercise the discretion of the court to remand this case for additional administrative proceedings. Moreover, this court concludes that in the interests of justice and to avoid any appearance of impropriety after this litigation's history, the further proceedings ordered by this court must take place before a different ALJ.

Specifically, pursuant to this remand, plaintiff and Commissioner shall develop the record regarding the extent of plaintiff's impairments. Upon remand, the new ALJ is instructed

to obtain updated medical records concerning plaintiff. The ALJ shall also provide plaintiff an opportunity to submit additional medical evidence in support of her alleged limitations, as well as evidence regarding the extent and precise scope and duration of her employment in 2001.

Additionally, the new ALJ shall address and ascertain plaintiff's functional limitations and her assessments in accordance with all applicable administrative and legal standards. The ALJ shall address and give full consideration to all lay witness testimony submitted in support of plaintiff's request for benefits. Plaintiff shall be permitted to be represented by counsel, present witnesses and evidence, and to refer to and submit into the record all testimony and evidence that has been presented already on her behalf.

The ALJ shall also elicit and assess plaintiff's testimony, and provide adequate explanations establishing that her testimony and all lay witness testimony was considered in accordance with all applicable standards and laws, and fully evaluated in the assessment of plaintiff's possible eligibility for benefits.

**CONCLUSION**

The record of this case has been reviewed fully. This court concludes that the decision of the Commissioner must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Order and the parameters provided herein.

IT IS SO ORDERED.

DATED this __7__ day of May, 2007.

/s/ Ancer L. Haggerty

                                                               Ancer L. Haggerty
                                          United States District Judge